Dear President Ourso, Jr.:
Your request for an Attorney General's Opinion has been assigned to me for research and reply. On behalf of the Iberville Parish Council, you have asked for our opinion on a proposed cooperative endeavor agreement between the Iberville Parish Council ("Parish") and Cox Communications of Louisiana ("Cox").
According to your request, the Parish currently has a non-exclusive franchise agreement with Cox. Under the agreement, Cox is required to pay to the Parish a franchise fee equal to five percent (5%) of the gross revenues received from providing cable service to the unincorporated areas of Iberville Parish. The franchise agreement further contains a "density requirement" which states that whenever Cox receives a request for cable service from a potential subscriber where there are at least forty (40) residences within one (1) mile from a portion of Cox's trunk or distribution cable, Cox shall extend its cable system to such subscriber's at no cost to the subscriber or the Parish. If extended, each subscriber shall be responsible for actually obtaining and paying all connection fees and service charges to obtain cable service.
Your request indicates that there are certain residents in the rural parts of Iberville Parish who do not currently have access to cable television services and who do not meet the triggers of the "density requirement." As such, the Parish would like to enter into a cooperative endeavor agreement with Cox whereby the Parish would utilize and expend the monies derived from the five percent (5%) franchise fee in exchange for Cox's extension of its trunk or distribution lines to the more rural and remote areas of the Parish. You seek our opinion as to the legality of such an arrangement. *Page 2 
In general terms, cooperative endeavor agreements are authorized by La.Const. art. VII, Sec. 14(C), which provides:
 For a public purpose, the state and its political subdivisions or political corporation may engage in cooperative endeavors with each other, with the United States or its agencies, or with any public or private association, corporation, or individual.
However, section (C) merely supplements the prohibition against gratuitous donations contained in section (A) of La.Const. art. VII, Sec. 14. It does not create an exception to or exemption from the general constitutional norm. Therefore, even though the expenditure of public funds, [1] and transfer of public property is being done pursuant to a cooperative endeavor agreement, the expenditure still must be examined in light of La.Const. art. VII, § 14(A) which provides in pertinent part, as follows:
 Section 14(A) Prohibited Uses. Except as otherwise provided by this constitution, the funds, credit, property or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. . .
This constitutional provision is violated "when public funds or property are gratuitously alienated." Board of Directors of the IndustrialDevelopment Board of the City of Gonzales, Louisiana, Inc. v. AllTaxpayers, Property Owners, Citizens of the City of Gonzales, et al., 2005-2298 (La. 9/6/06), 938 So.2d 11, 20 (the "Cabela's" case). Based on the standard articulated in Cabela's, it is our opinion that in order for an expenditure of public funds to be permissible under La.Const. art. VII, Sec. 14(A), the entity spending the funds must have the legal authority to do so and must be able to show: (i) a public purpose for the expenditure or transfer that comports with the governmental purpose for which the public entity has legal authority to pursue; (ii) that the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and (iii) that the public entity has a demonstrable, objective, and reasonable expectation of receiving at least equivalent value in exchange for the expenditure or transfer of public funds.
The Cabela's standard places a strong emphasis on the reciprocal obligations between the parties to ensure that there is not a gratuitous donation of public funds. In Cabela's, the Court looked at the intent of the public entities to conclude that the alienation of funds was non-gratuitous. The public entities *Page 3 
demonstrated a non-gratuitous intent by showing that the project served a public purpose, that financial projections showed financial benefits to the entities exceeded the amount pledged, and that they had a reasonable expectation that the economic benefit from the project would exceed the obligations undertaken by the public entities. These factors alone were not enough to show a non-gratuitous intent on the part of the City and the State. However, when looking at these factors, along with the project and the related documents as a whole, the Court concluded that there was a non-gratuitous intent on behalf of the City or the State. Basically, the Court looked at the transaction as a whole to see if it passed the "smell test".
According to your request, the Iberville Parish Office of Homeland Security Emergency Preparedness routinely utilizes that Parish's emergency telephone ring down system and cable television override system to alert area residents to emergency and disaster related information. Further, the Parish considers the utilization of its cable override system essential for notification of residents during times of emergencies and/or disasters.
Ensuring that the citizens of Iberville Parish will have access to emergency alerts and emergency and disaster related information qualifies as a public purpose. Part of the Parish's governmental duties and responsibilities is to ensure the safety of its citizenry and to keep them informed of any possible public emergency or disaster. We believe the expenditure of public funds in furtherance of such matters comports with the governmental purpose for which parish governments exist. However, when applying the second and third prongs of the Cabela's
analysis to the proposed cooperative endeavor agreement, (i.e., that the expenditure does not appear to be gratuitous and that the public entity expects to receive equivalent value for the public funds it spends) we have some concerns. Albeit not completely gratuitous, it is unclear how the Parish can demonstrate that it can have a reasonable expectation of receiving equivalent value for the public funds it will spend under the proposed cooperative endeavor agreement.
Under the proposed cooperative endeavor agreement, the proceeds from the five percent (5%) fee will be used to offset the costs of installing and extending Cox's trunk and/or distribution lines. Although your request indicates that all residents shall be responsible for actually obtaining and paying all connection fees and service charges to obtain cable service and the Parish will at all times maintain ownership of the public rights of way, your request indicates that the Parish will not have any ownership interest in the actual trunk and/or distribution lines extended. Thus, there is no quantifiable or tangible value the Parish could point to, or use, to determine whether the Parish was receiving equivalent value for the funds it would expend. *Page 4 
Thus, when considering the proposed cooperative endeavor agreement under the lens of La.Const. art. VII, Sec. 14, there are concerns as to whether the Parish is receiving equivalent value for the money it will spend in connection with the cooperative endeavor agreement. It is true that the citizens of Iberville Parish will benefit from the cooperative endeavor agreement by having access to emergency alerts and disaster information via newly acquired cable services. However, the inability to quantify this benefit must be considered when the Parish examines its monetary obligations and makes the determination as to whether it is receiving equivalent value for the public funds it will expend. If the Parish is confident that it will be able to objectively determine that the benefit it receives is commensurate with the public funds actually expended, then the proposed cooperative endeavor agreement appears acceptable and permissible. Failing such a determination and conclusion, the proposed cooperative endeavor agreement would not be permissible and would amount to a prohibited donation under Article VII, Section 14 of the Louisiana Constitution.
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ Michael J. VALLAN Assistant Attorney General
 JDC/MJV/chb
[1] Once collected, the five percent (5%) franchise fee paid by Cox to the Parish becomes public funds.